DORIS CHRISTO, APPELLEE, V. PENNSYLVANIA LIFE
INSURANCE COMPANY, APPELLANT.

177 N. W. 2d 499

Filed May 28, 1970.   No. 37383.

Walter, Albert, Leininger & Grant and Noyes W.
Rogers, for appellant.

McFadden & Kirby, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,
SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

In an action on an accidental death insurance policy,
jury verdict went for the beneficiary.   Insurer appeals.
The question is sufficiency of the evidence to sustain a
finding that the insured died of accident from generation
of atmospheric electricity by thunderstorm.

The insured, Jim C. Christo, assisted by his son Tim,
age 13, was farming 160 acres on March 30, 1968.   At
4:15 p.m. after coffee at home with his daughter and wife,
plaintiff herein, he went to a field.   He was there situ-
ated about ¼ mile from a field that Tim was plowing.
Jim began operating a tractor that was towing a harrow
in 4 sections, 24 feet wide, and with 300 teeth of steel.
At 4:30 p.m. plaintiff and Tim saw the tractor-harrow
moving aimlessly without an operator.   Jim was found
prostrate some distance away.

Plaintiff examined the body at the scene.   She saw an
unnatural  appearance of hair which she then ascribed
to dust.   There was an abrasion 1½ inches wide with
three drops of blood on the left side of the pate.   A few

drops of blood were observable in the left ear. Plaintiff found no pulse and no sign of life.

Jim had been working in a storm area. Plaintiff and Tim testified to a sprinkle and loud thunder nearby, but not to lightning flashes. A witness 0.9 miles southeast of the farm had noted loud, crackling thunder and lightning flashes coming from the direction of the farm. A neighbor 2 miles away had heard crackling thunder in that direction, but she had seen no lightning flash.

Plaintiff at the mortuary noted that part of deceased's hair was brown, coarse, straight, and brittle—characteristics not present prior to death. A neighbor described the hair as dry like straw or an "over-processed permanent."

Jim, age 50, had not complained of illness on the day of his death. His medical history was negative.

Dr. Gerald J. Spethman on gross examination of the body at the mortuary noted only solid, dried blood, "not a very large amount at all," in the left ear. A spinal tap was normal. He formed no opinion of cause of death.

A pathologist, Dr. Roderick R. Landers, examined the heart, part of the lungs, aorta, kidneys, liver, and spleen. The heart showed some arteriosclerotic plaqueing and some hardening of the arteries. The disease was normal for a man age 50. Dr. Landers formed no opinion of cause of death, but he could not rule out heart disease. He associated a usual burn with skin probably charring and reddening, and with singed hair changing in color from black to gray and in texture from smooth to coarse. Referring to the deceased's hair, the doctor testified: "Yes . . . it was possible that it was due to a burn."

The necessity and sufficiency of medical opinion to sustain a finding of causation in favor of the proponent of the evidence varies according to circumstances. cf. Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245 (1967); Clouse v. St. Paul Fire & Marine Ins. Co., 152 Neb. 230, 40 N. W. 2d 820, 15 A. L. R. 2d 1008 (1950). Weak

circumstances may call for strong medical opinion. At the other extreme, circumstances may exempt the proponent from offering medical opinion.

A jury might reasonably find a number of noteworthy circumstances. The age and health of Jim. The width of the harrow. The operating state of the machinery without Jim. The absence of teeth marks on the body. The color and texture of the hair. The medical testimony. The risk of death from the lightning.

The evidence is sufficient to sustain the verdict.. The judgment is affirmed. We allow plaintiff $500 for services of her attorneys in this court.

AFFIRMED.

CARTER, J. dissenting.

The plaintiff as beneficiary in a policy of accident insurance brought this action against the defendant insurance company to recover the face amount of such policy because of the death of her insured husband which she alleged was caused by accident. The sole issue on this appeal is whether the evidence sustains the finding of the jury that the deceased met his death by accidental means.

There is little or no dispute in the evidence. On the day of the accident the deceased, a 50-year-old farmer, was apparently in good health. At about 4:15 p.m., he went to the field to harrow some young oats. He was last seen alive on his tractor pulling a 4-section harrow. Both the wife and a 13-year-old son, each approximately a quarter mile distant, were first alerted to the situation when they observed the tractor and harrow aimlessly moving in the oatsfield with no driver in the driver's seat. They hurried to the scene and found the deceased lying on the ground dead. The wife looked for injuries and found a 1½-inch cut on the top of the head and about 3 drops of blood in the shallow wound. She also observed a small amount of blood in the left ear. She also testified that his hair looked a little funny, but concluded that this was probably due to dust and dirt. There

was no evidence to indicate and it is not contended that the deceased had been struck by the 24-foot harrow.

It is contended by plaintiff that the deceased had been killed by lightning. Plaintiff testified the weather had turned stormy, there had been a sprinkle of rain, and there had been some loud thunder and flashes of lightning. There is no evidence that lightning had struck in the area although lightning had been observed in the sky by others. Plaintiff testified that after the body had been prepared by the mortician for burial, his black hair appeared brownish, hard and brittle in texture, and coarser and straighter than in his lifetime. A neighbor testified that the hair after preparation for burial was "more like an over-processed permanent," straw-like and dry.

Dr. Gerald J. Spethman was called to the scene of the death and made an examination in gross at the mortuary. He found some solid, dried blood in the left ear. He made a spinal tap and found a normal condition. He examined the hair and found it to be black. He performed a partial autopsy and sent the heart, a portion of the lungs, aorta, kidneys, liver, and spleen to Dr. Roderick R. Landers, a pathologist, for examination. In answer to a hypothetical question containing the foregoing evidence, Dr. Spethman testified that he was unable to determine the cause of death. Dr. Landers testified that he examined the vital organs sent to him and, in answer to a proper hypothetical question, testified that he was unable to determine the cause of death.

The burden of proof is on the plaintiff to establish death by accidental means. Lebs v. Mutual Benefit Health & Accident Assn., 124 Neb. 491, 247 N. W. 19. A plaintiff in such a case is not required to exclude the possibility of death occurring by some other means, nor is the defendant required to prove that death occurred by some other means. But there must be evidence to support a jury finding that the death was caused by an accident.

There is no such evidence in this record. The death is as likely to have been caused by heart failure as by lightning, if not more so. The burden of proof in this case is on the plaintiff to prove by a preponderance of the evidence that the deceased died by being struck by lightning; the theory on which she seeks recovery. There is no such evidence here, the evidence being speculative and conjectural only.

"Plaintiff may establish his case by circumstantial evidence as well as by direct evidence, yet circumstantial evidence is not sufficient to sustain a verdict unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom. Popken v. Farmers Mutual Home Ins. Co., 180 Neb. 250, 142 N. W. 2d 309. Or, to phrase it differently, the evidence must be sufficient to make the theory of causation reasonably probable and not merely possible. Conjecture, speculation, or choice of possibilities is not proof. There must be something more which will lead a reasoning mind to one conclusion rather than another." Raff v. Farm Bureau Ins. Co., 181 Neb. 444, 149 N. W. 2d 52. Where several inferences are deducible from the facts presented, which inferences are opposed to each other, but equally consistent with the facts proved, the plaintiff does not sustain his position by a reliance alone on the inferences which would entitle him to recover. Shamblen v. Great Lakes Pipe Line Co., 158 Neb. 752, 64 N. W. 2d 728.

With reference to the necessity of expert evidence as to the cause of death, the question appears generally to be dependent upon the nature of the incident of death and the surrounding circumstances; that is, if the evidence is of an objective nature, the jurors may draw their conclusions as to the cause of death from such facts alone, but if the evidence is subjective in character, there must be expert evidence as to the cause of death. The plaintiff and one other lay witness testified to the ap-

pearance of the deceased after his death which is subjective evidence only. In such a case, the evidence is subjective and of such a nature that laymen cannot, with reasonable certainty, determine the cause of death. In such a case, there must be offered evidence by expert witnesses, learned in human anatomy and its functions, who can testify, either from a personal examination, or knowledge of the history of the case, or from a hypothetical question based on the facts, that the deceased, with reasonable certainty, met his death as the plaintiff asserts. 32 C. J. S., Evidence, § 569(1)e, p. 612; 100 C. J. S., Workmen's Compensation, § 555(5), p. 672; 22 Am. Jur. 2d, Damages, § 299, p. 399; Oliveira v. Warren, 24 Cal. App. 2d 712, 76 P. 2d 113; City of Pawhuska v. Crutchfield, 155 Okla. 222, 8 P. 2d 685; Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 P. 230; Sickmund v. Connecticut Co., 122 Conn. 375, 189 A. 876.

The majority opinion cites but two cases in support of its reasoning, to wit, Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245, and Clouse v. St. Paul Fire & Marine Ins. Co., 152 Neb. 230, 40 N. W. 2d 820, 15 A. L. R. 2d 1008. Both of these cases are supported by objective evidence and are correct, but they have no application here.

There is no evidence in this record that the change in the hair of the deceased could or did result from lightning, or that it was even an indication of death from that cause. Two physicians testified with this evidence before them that they were unable to determine the cause of death. Both testified that it was possible that death was caused by lightning and they likewise testified that it was possible that death resulted from a heart attack. Both testified that they could not determine the cause of death. It would be an anomaly indeed if a jury should be permitted to speculate on the cause of death without the benefit of any medical evidence and particularly where, as here, the only doctors called testified that they could not determine its cause after considering the subjective evidence in the record. As

stated in Lundrigan v. City of Los Angeles, 82 Cal. App. 2d 238, 186 P. 2d 12: "The existence of a causal relation in cases of this kind is a scientific question requiring expert testimony."

I submit that the verdict of the jury was based on speculation, conjecture, or choice of possibilities which will not support a verdict. It takes more than the finding of a human corpse and lightning in the sky to sustain a verdict of accidental death. The trial court was in error in failing to direct a verdict for the defendant at the close of all the evidence and in failing to sustain defendant's motion for judgment notwithstanding the verdict. I would reverse the judgment and dismiss the action.

WHITE, C. J., and NEWTON, J., concur in this dissent.