SHIRLEY PIGNOTTI, APPELLANT, v. COFFEE TIME, INC., ET AL., APPELLEES.

180 N. W. 2d 677

Filed October 30, 1970. No. 37581.

Larry E. Welch, for appellant.

Edwin Cassem of Cassem, Tierney, Adams & Henatsch, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from the affirmance of an award of the compensation court en banc. Plaintiff was awarded her medical expenses, total temporary disability for 20 2/7ths weeks; and 10 percent permanent partial disability to the body as a whole. This appeal by the plaintiff is concerned solely with the extent of temporary disability, and percentage of permanent partial disability.

Plaintiff, a married woman, 39 years of age at the time of injury on Thursday, January 23, 1969, had been employed the past 3 years as a catering driver by Coffee Time, Inc., hereinafter referred to as defendant. She drove a catering truck, selling lunches and beverages to customers on her route. Part of her duties required her to load the truck for the day's run with crushed ice, milk, pop, coffee, and sandwich trays. The ice was scooped by the plaintiff into 10 gallon buckets, and loaded into the truck. In addition, plaintiff loaded about three cases of milk each day, and about eight gallons of coffee. The coffee was in large metal milk cans, which plaintiff placed on the truck.

Plaintiff's truck slid through a stop light and collided with another car. As a result of the impact she hit her chest on the steering wheel. She was taken to the

Douglas County Hospital where she was examined and released. Plaintiff did not return to work until the following Monday. She went to a doctor on Tuesday because of the pain in her arms. He referred her to an orthopedist. Plaintiff continued to work while attempting to get an appointment with the orthopedist. She was able to do so the following Friday. The orthopedist prescribed certain drugs and medication, recommended physical therapy, and advised plaintiff to rest for a week. She remained off work for a week, and when she returned the employer told her she could work if she could get someone to load the truck for her. She did not do so, and her testimony is that on later occasions the employer failed and refused to take her back so she never resumed her former employment.

Neither plaintiff's nor defendant's orthopedists appeared at the hearing. Narrative medical reports were filed for both. Three reports of plaintiff's orthopedist are in evidence. On April 17, 1969, he gave his diagnosis as a sprain of the cervical spine, and stated the treatment consisted primarily of therapy, and that plaintiff could probably return to work about May 1, 1969. His report of June 19, 1969, stated: "Physical examination on June 18th revealed tenderness in the left trapezius. Motion of the neck is normal in all directions. The upper extremity reflexes are normal and there is no objective evidence of muscular weakness or atrophy in either upper extremity. X-rays were repeated and these films did not show any evidence of bony injury.

"* * * I think that Mrs. Pignotti should be permitted to return to work and make an effort to do so in spite of the fact that I believe this would aggravate her symptoms but I think that this would be temporary."

The report of plaintiff's orthopedist of October 15, 1969, contained the following: "She was last seen October 14, 1969 still complaining of pain across the shoulders with tenderness in the middle trapezius on the right and the upper trapezius on the left. Extension and flex-

ion of the cervical spine lateral were good. Lateral bending did produce some pain but range was good. * * *

"My final diagnosis is extension sprain of the neck with residual fibromyositis of the trapezius muscles bilaterally.

"DISABILITY: Total temporary disability lasted until August 8, 1969 when she was advised to return to work but to avoid heavy lifting. Residual disability of 20% of the body as a whole is estimated based primarily on efforts to return to work and inability to lift and the persistence of pain across the shoulders."

Defendant's orthopedist, in his report dated April 8, 1969, stated: "She is still symptomatic and it is my opinion that this is due to a cervical strain. I do not feel that this injury will result in permanent disability and I feel that she should be able to return to work by the 1 May 1969." In his report of May 27, 1969, defendant's orthopedist stated: "Examination revealed a full range of cervical motion. The patient complained of tenderness to any pressure in the right cervical area and in the posterior shoulder muscles to both sides of the mid line and also along the dorsal para-spinal muscles.

"In spite of active treatment by Doctor Stanley Bach, and the fact that it has been four months since her injury, she still has the same complaints referable to the neck and shoulders.

"I would expect further improvement in this individual and I would not anticipate the permanent partial disability to exceed 5 percent."

Plaintiff had a prior cervical disability in 1965, although her orthopedist doubted if the present trouble could be traced to that source, but that absolute proof was not possible.

"To entitle a claimant under the Workmen's Compensation Act to recover, he must establish by a preponderance of the evidence that he suffered an accident arising out of and in the course of his employment.

"Triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testimony." Dike v. Betz, 181 Neb. 580, 149 N. W. 2d 750.

Compensation cases are triable de novo in this court. Yost v. City of Lincoln, 184 Neb. 263, 166 N. W. 2d 595. However, where, as here, all of plaintiff's complaints are subjective, we cannot ignore the fact that the compensation court in assessing the extent of her injuries on two occasions had an opportunity to observe the demeanor of the plaintiff. This is particularly important where the medical witnesses did not appear but filed medical reports.

Plaintiff, except for the few days after the accident, never resumed her former employment. She testified she attempted to secure other employment at numerous businesses on her catering route, but was unable to do so. Although plaintiff's orthopedist bases his opinion as to her residual disability on her efforts to return to work and her inability to lift, she did not return to any type of employment after the accident. Her inability to lift, on this record, is in the realm of conjecture.

When we consider the fact that the trial court observed the demeanor of the witness in the consideration of the testimony of the medical witnesses, we cannot say that the conclusion reached is not a just one, and affirm the judgment.

AFFIRMED.